IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 22-CR-412 (TSC) |
| SCOTT MILLER, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO CONTINUE CHANGE OF PLEA HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia hereby submits its response in opposition to defendant's Motion to Continue Change of Plea Hearing (Dkt. Entry 38). Defendant asks the Court to sanction an end run around the remand requirement in the Bail Reform Act and the Court should deny his request.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Scott Miller, a member of the Maryland Chapter of the Proud Boys, traveled from his home in Maryland to Washington D.C. on the morning of January 6, 2021. Dressed in a tan coat, black hooded sweatshirt, tan backpack, orange ski goggles, black gloves, and a black and red neck gaiter, Miller made his way to the Lower West Terrace where the large mob was violently fighting the police defending the entrance to the U.S. Capitol known as "the tunnel." By approximately 4:27 p.m., Miller had joined the melee and assaulted a Metropolitan Police Officer by striking the officer multiple times with the end of a pole.

1



At approximately 4:31 p.m., Miller began to throw objects into the tunnel at officers. As shown below, Miller threw at least five items at the police, including a pipe, a bottle, a stick, a speaker, and an item of clothing, respectively.





2







After throwing these items into the tunnel, at approximately 4:33 p.m., Miller then assaulted a number of officers by striking them with a large blue and white pole.





Approximately five seconds later, Miller again swung and jabbed the pole multiple times and struck more officers.





Miller then grabbed hold of a U.S. Capitol Police riot shield being held by two officers and after a brief struggle, forcefully pulled the U.S. Capitol Police riot shield out of the officers' grip.







Miller then took the shield and handed it to someone in the crowd before disappearing into the crowd.

During the investigation, law enforcement determined that Miller participated in a group encrypted chat with other members of the Maryland Proud Boys. The chapter used the chat to discuss plans to travel to the Capitol on January 6, 2021. One member reposted a statement from an individual vowing that he would be armed and would not stop at the steps of the Capitol but would come to the "FRONT FUCKING DOOR."  On January 4, 2021, one of the participants in the chat stated, "Im going to assume we all know the thing kicks off at the ellipse at 11 and the march will be to the capitol building."  Participants also discussed tactical gear, such as stab vests

6

and mouth guards, and the need to fight and resist law enforcement. One user advised, "don't be afraid of jail . . . If the police try this shit it is our CONSTITUTIONAL duty to take them out." On January 6, the participants also used the chat on January 6th to discuss and celebrate their efforts to get into the building.

At the time of Miller's arrest, FBI executed a search warrant on his home and found four firearms – including a handgun, loaded shotgun, rifle and disassembled assault rifle – instructions on assembling automatic assault rifles, loaded magazines, six boxes of ammunition, armored plates, a tactical vest, and indicia of membership in the Proud Boys, among other items.

Following his arrest in December 2022, the government sought his detention pursuant to 18 U.S.C. § 3142. *See* Dkt. Entries 11 and 17. Magistrate Judge Upadhyaya denied the government's motion and released Miller on strict conditions. Miller was later indicted on nine counts arising from his violent actions on January 6, 2021: civil disorder, two counts of assaulting officers with a deadly or dangerous weapon, theft of government property, entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, disorderly conduct with a deadly or dangerous weapon, engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, impeding passage through the Capitol grounds or buildings and an act of physical violence in the Capitol grounds or buildings.

Miller previously signed a plea letter with the government and was scheduled to change his plea on September 28, 2023. At that hearing, defense counsel represented that she had not advised her client of the possibility that he will be taken into custody following his guilty plea despite language advising the defendant regarding detention in the signed plea agreement. At the government's request and the Court's instruction, the change of plea hearing was continued to October 24, 2023, to allow defense counsel to have additional conversations with her client. Since

that time, the government has provided defense counsel with an updated plea offer that expires on October 24, 2023. As of the date of this submission, defendant has not signed that plea agreement, though defense counsel has represented to the government that he will sign it by the expiration date. Defendant now moves to continue his change of plea hearing for almost three months, until January 2024 for the stated reason of wanting more time to get his affairs in order.

## ARGUMENT

The Court should deny Miller's motion to continue his change of plea for an additional three months. As set out above, Miller has already had a one-month continuance, more than enough time to get his affairs in order. Additionally, if, as defense counsel represents, Miller signs the plea agreement in the next week, he will have admitted to the committing at least one violent felony against police officers defending the United States Capitol.

Section 3143 of the Bail Reform Act requires defendants who have been convicted of a violent felony to be detained pending trial except in circumstances that do not apply here.  In so doing, Congress recognized that a defendant's risk of danger to the community is higher after conviction as the charges against the defendant are no longer unproven. The government sought Miller's detention after his arrest because it believed Miller presented a danger to the community at that time based on the facts and circumstances set out above, and that position has not changed. Miller's attempts to take advantage of a plea agreement with the government and delay the change of plea hearing to a time that is convenient for him, skirts Congress's goal to ensure that the community is safe from convicted violent offenders.

Miller represents that he would like the additional time in order to sell his truck and to earn additional paychecks to help support his wife while he is in jail.  The government does not contest that Miller's incarceration may pose a financial hardship for his wife.  That said, Miller has been

allowed to remain in the community (and earn a paycheck) for more than 10 months already, over the government's objection. Unlike other defendants facing similar charges, such as Christian Manley, (21-CR-691 (TSC)), who were detained immediately, he has already had far longer to prepare for his potential incarceration.

Extending the plea hearing further also undermines the public interest in the conviction's finality. Allowing Miller to wait a total of four months between signing the plea paperwork and following through on his promise invites a risk that he will change his mind or devise a reason why the hearing should be extended yet again. If he is ready to accept responsibility for the violent crime he committed on January 6, he should be prepared to do so reasonably promptly here.

For all of these reasons, the government asks the Court to deny Miller's motion to continue the change of plea hearing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
IL Bar No. 6316768
(202) 252-6778
Kaitlin.klamann@usdoj.gov