# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                               |   |                            |
|-------------------------------|---|----------------------------|
| **UNITED STATES OF AMERICA**  | : | **Case No.: 22-CR-412 (TSC)** |
|                               | : |                            |
| **v.**                        | : | **18 U.S.C. §111(a) and (b)** |
|                               | : |                            |
| **SCOTT MILLER,**             | : |                            |
|                               | : |                            |
| **Defendant.**                | : |                            |
|                               | : |                            |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Scott Miller, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.  The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.  On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.  On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.       As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5.       At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.       At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.      In December 2020 and early January 2021, defendant Scott Miller, who was a member of the Maryland Chapter of the Proud Boys, communicated with other Proud Boys members about traveling to Washington D.C. on January 6, 2021.

9.      On the morning of January 6, 2021, Miller left his home in Millersville, Maryland, purchased a new truck and drove to Washington, D.C. By approximately 4:15 p.m., Miller was a member of the large crowd located near an entrance to the United States Capitol Building on the Lower West Terrace known as "the tunnel." Miller was wearing orange ski goggles, a black

hooded sweatshirt under a tan coat, a tan backpack, a black and red neck gaiter, dark colored pants, and black motorcyle gloves.

10.     Miller joined the crowd of people that were attacking members of the Metropolitan Police Department ("MPD") and United States Capitol Police ("USCP") who were defending the tunnel and were lawfully engaged in the lawful performance of their official duties.

11.     Specifically, at approximately 4:27 p.m., Miller struck MPD Officer L.M. with a long wooden pole multiple times as she attempted to defend the tunnel.

12.     After the assault of Officer L.M., beginning at approximately 4:31 p.m., Miller threw at least five objects at the police in the tunnel, including a metal pipe or pole, a bottle, a short wooden stick, a large black speaker, and an article of clothing.

13.     At approximately 4:33 p.m., Miller then struck multiple police officers who were defending the tunnel several times by swinging and jabbing a long blue and white pole at their heads.

14.     Shortly thereafter, Miller grabbed ahold of a U.S. Capitol Police riot shield held by two police officers. Miller began pulling the shield out of their hands and after a brief struggle, ripped the shield away from the officers. Miller then carried the shield back into the crowd behind him and handed it to another rioter.

15.     The riot at the Capitol was a civil disorder, and it interfered with the Capitol Police's protection of the Capitol and U.S. Secret Service's protection of the vice president, both of which are federally protected functions. It also obstructed, delayed, or adversely affected commerce in the District of Columbia on January 6.

### *Elements of the Offense*

16.     The parties agree that assaulting, resisting, or impeding officers, in violation of 18 U.S.C. § 111(a) and (b), requires the following elements:

    a.   The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer L.M.;

    b.   The defendant did such acts forcibly;

    c.   The defendant did such acts voluntarily and intentionally;

    d.   Officer L.M. was an officer or an employee of the United States who was then engaged in the performance of her official duties or assisting officers of the United States who were then engaged in the performance of their official duties;

    e.   The defendant made physical contact with Officer L.M. or acted with the intent to commit another felony; and

    f.   In doing such acts, the defendant intentionally used a deadly or dangerous weapon.

### *Defendant's Acknowledgments*

17.     The defendant knowingly and voluntarily admits to all the elements as set forth above.

18.     Specifically, defendant admits that he forcibly assaulted Officer L.M. with a long wood pole.  As defendant used the wood pole, it was a dangerous weapon, capable of inflicting death or serious bodily injury, and he used it intentionally. Defendant committed this act voluntarily and intentionally.

19.     Defendant further admits that Officer L.M., an employee of the Metropolitan Police Department, was assisting officers of the United States who were then engaged in the performance of their official duties.

20.     Defendant further admits that, by striking Officer L.M. with the pole, he made physical contact.  He also acted with the intent to commit another felony; namely, civil disorder, in violation of 18 U.S.C. § 231(a)(3).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Scott Miller, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _10/21/23_

_Scott Miller_

Scott Miller
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: ___10/21/2023___

_Elizabeth Mullin_

Elizabeth Mullin
Attorney for Defendant